UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA RILEY, in her capacity as the Treasurer-Tax Collector of Stanislaus County,<br><br>    Plaintiff,<br><br>    v.<br><br>LLOYD G. PLOUTZ, et al.,<br><br>    Defendants. | No. 1:20-cv-01177-DAD-EPG<br><br>ORDER GRANTING DEFENDANT AND CROSS-CLAIMANT UNITED STATES' MOTION FOR SUMMARY JUDGMENT AGAINST CROSS-DEFENDANT LLOYD G. PLOUTZ<br><br>(Doc. No. 81) |
| UNITED STATES OF AMERICA, INTERNAL REVENUE SERVICE,<br><br>    Cross-Claimant,<br><br>    v.<br><br>LLOYD G. PLOUTZ,<br><br>    Cross-Defendant. | |

This matter is before the court on the motion for summary judgment filed by cross-claimant United States of America, Internal Revenue Service ("United States") against cross-defendant Lloyd G. Ploutz. (Doc. No. 81.) In light of the ongoing public health emergency posed by the COVID-19 pandemic, the pending motion was taken under submission based on the papers. (Doc. No. 83.) For the following reasons, the court will grant the motion.

1

# BACKGROUND[1]

This case arises out of defendant Lloyd G. Ploutz's failure to pay his federal income taxes and failure to repay several other private loans. As a result of defendant Ploutz's debts, he was forced to sell his home located in Stanislaus County. The proceeds of that sale were in the possession of the county treasury, who then deposited those funds into this court's registry pursuant to Local Rule 150. (*See* Doc. No. 35.) The various defendants in this action have submitted respective claims to that money.

Based on a statement of facts filed by defendant Ploutz, he is indebted to the other named defendants for various reasons and in varying amounts. (Doc. No. 47 at 2.) For example, to finance the purchase of his home, defendant Ploutz borrowed funds from defendant William Morehead, a real estate lender, at an interest rate of 10%, and that loan has not been repaid. (*Id.*) In addition, to pay for his daughter's medical care, defendant Ploutz represents that he borrowed $10,000 from Art Seeger of defendant Seeger Industries, Inc. ("Seeger"). (*Id.*) Defendant Ploutz has likewise not repaid that loan. (*Id.*) Defendant Ploutz also owes defendant Granada Park Homeowners Association "Monthly Fees" that he has never paid. (*Id.*) Lastly, defendant Ploutz concedes that he owes the United States government federal income taxes, but represents that he does not "honestly know" how much he owes in that regard.[2] (*Id.*)

On or about February 27, 2019, plaintiff Donna Riley, in her capacity as the Treasurer-Tax Collector of Stanislaus County, sold a parcel of real property owned by defendant Ploutz located at 336 De Vega Court, Modesto, CA 95354 (the "De Vega Court Property") to pay unpaid property tax assessments. (SF at ¶ 1.) After paying outstanding property taxes and the costs of sale, $168,533.44 in excess proceeds were "on deposit in the County Treasury" and remained

---

[1] The relevant facts that follow are derived primarily from the parties' joint stipulated facts (Doc. No. 81-2 ("SF")), the undisputed facts as stated by cross-claimant United States which are unopposed by any other party (Doc. No. 81-1 ("UF")), and the statement of facts filed by defendant Ploutz, which is also unopposed (Doc. No. 47). This factual background is undisputed.

[2] Upon assessment of the tax liabilities that defendant Ploutz owed, a lien pursuant to 26 U.S.C. § 6321 arose in favor of the United States upon all property and rights to property belonging to defendant Ploutz, totaling $194,538.08, which exceeds the amount of funds deposited by the county in this court's registry. (Doc. Nos. 35; 81 at 11–12.)

available to distribute to legitimate claimants. (*Id.*; Doc. No. 1-1 at 14.) Stanislaus County solicited claims to those remaining funds. (SF at ¶ 10.) The defendants in this case each submitted claims to the excess proceeds remaining from the sale of the De Vega Court Property (the "proceeds"), as outlined below.

Defendant United States submitted a claim for excess proceeds based upon two "Notices of Federal Tax Lien" recorded with the Stanislaus County Recorder on March 13, 2012, and September 3, 2014. (*Id.* at ¶ 2.) Those liens secured unpaid income tax assessments made against Lloyd Ploutz for the 2007, 2008, and 2011 tax years. (*Id.*) Defendant Seeger submitted a claim for excess proceeds based upon an abstract judgment recorded with the Stanislaus County Recorder on December 12, 2013. (*Id.* at ¶ 3.) Defendant Granada Park Homeowner's Association submitted a claim for excess proceeds based upon a notice of delinquent assessment recorded with the Stanislaus County Recorder on February 15, 2013. (*Id.* at ¶ 5.) Defendant Morehead submitted a claim for excess proceeds based upon a deed of trust recorded with the Stanislaus County Recorder on July 6, 2012. (*Id.* at ¶ 6.) Defendant Ploutz submitted a claim for excess proceeds based upon his legal title to the De Vega Court Property. (*Id.* at ¶ 4.) Plaintiff Riley subsequently filed a complaint in interpleader initiating this action against each of the parties that submitted claims to the excess proceeds. (Doc. No. 1-1 at 12.) Plaintiff sought an order from the court requiring that the defendants interplead and litigate their rights to the proceeds. (*Id.* at 14.)

Defendant United States subsequently removed the case to this federal court (Doc. No. 1), and on October 1, 2020, filed a crossclaim against defendant Ploutz to reduce its income tax assessments for the 2007, 2008, and 2011 tax years to judgment. (Doc. No. 15.) After engaging in discovery, defendants United States, Seeger, and Morehead reached an agreement with respect to the priority of their respective claims. (Doc. No. 77.) Defendant United States notes that counsel for defendant Granada Park Homeowner's Association has indicated that it is also willing to join in that agreement, but that because defendant Ploutz did not appear at the January 5, 2022 settlement conference in this case and has declined to join in that agreement, "the lien holder parties have not yet been able to finalize their agreement in a stipulation to the [c]ourt finalizing

1   the disbursement of the disputed funds." (Doc. No. 81 at 5.)  As a result, on January 31, 2022,
2   defendant United States filed the pending motion for summary judgment against defendant
3   Ploutz, in which the United States seeks an order (1) reducing its income tax assessments to
4   judgments for the 2007, 2008, and 2011 tax years, and (2) determining that defendant Ploutz is
5   not entitled to any distribution from the proceeds of the sale of the De Vega Court Property.  (*Id.*)
6   Defendant United States is not requesting that the court determine the priority of the claims to the
7   property sale proceeds at this time, because it "is optimistic that the parties can finalize the
8   settlement agreement discussed" at the January 5, 2022 settlement conference, "which will
9   resolve the competing claims to the fund." (*Id.* at 12.)  The parties (with the exception of
10  defendant Ploutz who has not weighed in on this issue) appear to agree that before any funds may
11  be dispersed, the court must first issue an order reducing defendant Ploutz's federal tax
12  assessments to judgment and concluding that defendant Ploutz is not entitled to any of the
13  proceeds of the sale of the De Vega Court Property.
14         Defendant Ploutz, who is proceeding *pro se* in this action, did not file an opposition to the
15  pending motion.  On February 15, 2022, defendant Seeger filed a statement of non-opposition to
16  defendant United States' motion for summary judgment.  (Doc. No. 87.)  No other party has filed
17  a response to the pending motion.

## LEGAL STANDARD

19         Summary judgment is appropriate when the moving party "shows that there is no genuine
20  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.
21  Civ. P. 56(a).
22         In summary judgment practice, the moving party "initially bears the burden of proving the
23  absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387
24  (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The moving party
25  may accomplish this by "citing to particular parts of materials in the record, including
26  depositions, documents, electronically stored information, affidavits or declarations, stipulations
27  (including those made for purposes of the motion only), admissions, interrogatory answers, or
28  other materials," or by showing that such materials "do not establish the absence or presence of a

1  genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."
2  Fed. R. Civ. P. 56(c)(1)(A), (B).  When the non-moving party bears the burden of proof at trial,
3  "the moving party need only prove that there is an absence of evidence to support the non-moving
4  party's case."  *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R.
5  Civ. P. 56(c)(1)(B).  Indeed, summary judgment should be entered, after adequate time for
6  discovery and upon motion, against a party who fails to make a showing sufficient to establish the
7  existence of an element essential to that party's case, and on which that party will bear the burden
8  of proof at trial.  *See Celotex*, 477 U.S. at 322.  "[A] complete failure of proof concerning an
9  essential element of the nonmoving party's case necessarily renders all other facts immaterial."
10  *Id.* at 322–23.  In such a circumstance, summary judgment should be granted, "so long as
11  whatever is before the district court demonstrates that the standard for the entry of summary
12  judgment . . . is satisfied."  *Id.* at 323.
13      If the moving party meets its initial responsibility, the burden then shifts to the opposing
14  party to establish that a genuine issue as to any material fact actually does exist.  *See Matsushita*
15  *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In attempting to establish the
16  existence of this factual dispute, the opposing party may not rely upon the allegations or denials
17  of its pleadings but is required to tender evidence of specific facts in the form of affidavits or
18  admissible discovery material in support of its contention that the dispute exists.  *See* Fed. R. Civ.
19  P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773
20  (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for
21  summary judgment.").  The opposing party must demonstrate that the fact in contention is
22  material, i.e., a fact that might affect the outcome of the suit under the governing law, *see*
23  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec.*
24  *Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the
25  evidence is such that a reasonable jury could return a verdict for the non-moving party, *see*
26  *Anderson*, 477 U.S. at 250; *Wool v. Tandem Computs. Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).
27      In the endeavor to establish the existence of a factual dispute, the opposing party need not
28  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

5

dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Contra Costa Cnty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

## ANALYSIS

**A.  Whether Defendant Ploutz is Liable for Federal Income Tax Assessments for the 2007, 2008, and 2011 Tax Years**

Defendant United States seeks an order from this court reducing its tax assessments against defendant Ploutz to judgment.

Under 26 U.S.C. § 7402(a), this court has jurisdiction to issue orders rendering "such judgment and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a).  Defendant United States asserts that pursuant to § 7402(a), it is "entitled to reduce the federal income tax assessments against Mr. Ploutz for the 2007, 2008, and 2011 tax years to a monetary judgment of $194,538.08 as of January 31, 2022, plus statutory interest and penalties." (Doc. No. 81 at 6.)

"In an action to collect tax, the government bears the initial burden of proof." *Oliver v. United States*, 921 F.2d 916, 919 (9th Cir. 1990) (citing *United States v. Stonehill*, 702 F.2d 1288, 1293 (9th Cir. 1983)).  Acknowledging this burden, defendant United States points to the

/////

6

following evidence it has submitted on summary judgment of defendant Ploutz's failure to file or pay his federal income taxes for the 2007, 2008, and 2011 tax years:

- Declaration of Technical Advisor Anne Barclay
- IRS Forms 4340
- IRS Wage and Income Transcript for Ploutz's 2011 income tax year
- The United States' Second Set of Requests for Admission to defendant Ploutz (which were deemed admitted when defendant Ploutz did not respond thereto)
- Declaration of Isaac Hoenig

(Doc. No. 81 at 7.) According to defendant United States, the submitted evidence establishes "that the IRS made timely and valid assessments, and that there is still an outstanding balance due." (*Id.*)

A Form 4340 is an IRS "Certificate of Assessments and Payments" that calculates the amount of tax due for a tax year. *United States v. Ford*, No. 1:17-cv-00187-DAD-EPG, 2019 WL 2297295, at *2 n.1 (E.D. Cal. May 30, 2019). Forms 4340 are a method through which the United States can establish an individual's tax liability. *Id.* (citing *Hughes v. United States*, 953 F.2d 531, 535 (9th Cir. 1992)). A Form 4340 constitutes a proper means of establishing the facts of the administrative assessment and notice and demand for payment, specifically: (1) that the assessments were properly made pursuant to 26 U.S.C. §§ 6201–03; (2) that notices and demand for payment of the liabilities were properly sent as required under 26 U.S.C. §§ 6303(a), 6321; and (3) that a defendant is liable for the unpaid balance of taxes, penalties, interest, and other statutory additions shown on the Forms 4340. *See Koff v. United States*, 3 F.3d 1297, 1298 (9th Cir. 1993) ("It is settled in this circuit that [Forms 4340] are probative evidence in and of themselves and, in the absence of contrary evidence, are sufficient to establish that . . . assessments were properly made"); *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993) (finding that Forms 4340 constitute proof that proper notices were sent).

As a general rule, Forms 4340 "Certificates of Assessments and Payments establish[] a *prima facia* case for the United States." *United States v. Jones*, 33 F.3d 1137, 1139 (9th Cir. 1994); *Hansen*, 7 F.3d at 138 (concluding that, absent any contrary evidence, the government

properly relied on a Form 4340 to show that the IRS sent the taxpayers notice and demand for payment) (citation omitted). Certificates of Assessments and Payments, i.e., Forms 4340, are admissible into evidence as self-authenticating official records of the United States, carrying a presumption of correctness. *See Huff v. United States*, 10 F.3d 1440, 1445 (9th Cir. 1993); *Hughes*, 953 F.2d at 535, 540; *United States v. Peery*, No. 2:18-cv-01074-JAM-AC, 2019 WL 3459058, at *4 (E.D. Cal. July 31, 2019), *report and recommendation adopted*, 2019 WL 4605712 (E.D. Cal. Sept. 4, 2019). "Once introduced, the tax assessment is accorded a presumption of correctness and the taxpayer bears the burden of showing with contrary evidence that the IRS incorrectly calculated the tax deficiencies." *United States v. Boyce*, 148 F. Supp. 2d 1069, 1081 (S.D. Cal. 2001) (citations and quotation omitted); *see also United States v. Gonzales for Estate of Gonzales*, 323 F. Supp. 3d 1119, 1124 (N.D. Cal. 2018) ("Introduction of the assessment shifts the burden to the taxpayer to rebut the presumption by countervailing proof."). Although a presumption of correctness attaches to Forms 4340, a presumption of tax liability does not arise unless it is supported by a minimal evidentiary foundation. *Weimerskirch v. Commissioner*, 596 F.2d 358, 360 (9th Cir. 1979).

Here, defendant United States has not only submitted Forms 4340 that calculated defendant Ploutz's tax liability for the 2007, 2008, and 2011 tax years (*see* Doc. No. 81-3), but has also presented additional IRS forms to corroborate the Forms 4340 and to establish an evidentiary foundation for defendant Ploutz's tax liability, thereby establishing a *prima facia* case of that liability. *See Stonehill*, 702 F.2d at 1293 ("The factual foundation for the assessment is laid 'once some substantive evidence is introduced demonstrating that the taxpayer received unreported income.'"). For example, defendant United States has attached to its pending motion IRS records showing "that in 2011 Mr. Ploutz received $13,185 in social security benefits, $24,000 in 1099 income from Sierra Pacific Distribution Service, Inc., and $98,000 from Basic Resources, Inc." (Doc. No. 81 at 9.) According to the United States, these amounts match the "$125,841 in Adjusted Gross Income (AGI) listed on the Form 4340 for Mr. Ploutz's 2011 tax

/////

/////

year."³ (*Id.*) Defendant United States also notes that defendant Ploutz failed to respond to the United States' "Second Set of Requests for Admission" and thus has "admitted that his AGI and taxable income was as listed on the IRS Forms 4340, that he failed to timely file a tax return[,] and that he failed to timely pay his assessed liabilities." (*Id.*)

The court finds defendant United States' arguments to be persuasive. The factual foundation supported by the evidence provided by defendant United States by way of its IRS records, Forms 4340, and "Second Set of Requests for Admission" is sufficient to entitle the United States to a presumption of correctness in its tax assessment. *See Palmer*, 116 F.3d at 1312. Moreover, despite bearing "the burden of proving that the assessment is arbitrary and erroneous" to rebut that presumption, *Stonehill*, 702 F.2d at 1294, defendant Ploutz has presented no substantive argument nor provided any countervailing evidence in opposition to the pending motion for summary judgment. Therefore, and in light of the undisputed evidence before it, the court will enter judgment in favor of the United States as to defendant Ploutz's 2007, 2008, and 2011 income tax liability.

/////

/////

/////

---

³ Defendant United States concedes that wage and income information for defendant Ploutz was not found as to tax years 2007 and 2008 "due to the 10-year lapse of time for record keeping on the Integrated Data Retrieval System that contains reporting of wage and income." (Doc. No. 81-4 at 3.) Nevertheless, a minimal factual foundation supporting a Form 4340 is established even if the United States establishes only income earned in one year of several at issue, so long as a taxpayer does not challenge that assessment with their own adequate records. *Palmer v. U.S. I.R.S.*, 116 F.3d 1309, 1313 (9th Cir. 1997). In other words, a taxpayer who fails to maintain adequate records of unreported income cannot argue that the amount of purported income listed in a Form 4340 lacks precision. *See id.* ("Where the government's deficiency determination rests on the reasonable inference that the taxpayers must have had sufficient income to support themselves for years when no income was reported, and statistics are used to reconstruct income, the evidentiary foundation necessary for the presumption of correctness to attach is minimal."). "Of course, this presumption creates only a *prima facie* case, which shifts the burden to the taxpayers to rebut by showing that the inference is unreasonable in their case." *Id.* Here, as noted, defendant Ploutz has not come forward with any evidence, nor advanced any argument, suggesting that the government's estimated income totals for his 2007- and 2008-income years are unreasonable.

**B.     Defendant Ploutz is Liable for Statutory Penalties Because He Failed to Timely Pay and File His Federal Income Taxes**

Under 26 U.S.C. § 6651(a)(1) and (2), the IRS assesses penalties against taxpayers who fail to timely file a return and fail to timely pay the indicated amount "unless it is shown that such failure is due to reasonable cause and not due to willful neglect." 26 U.S.C. § 6651(a).

The amount of the penalty for failure to pay is one-half a percent (0.5%) of the tax owed for every month (or portion therefor) that the tax is not paid, not to exceed twenty-five percent (25%). 26 U.S.C. § 6651(a)(2). This penalty increases to 1% a month ten days after a notice of intent to levy is sent to the taxpayer. 26 U.S.C. § 6651(d)(1), (2). Defendant United States asserts—and defendant Ploutz does not contest—that Ploutz has not paid his tax liabilities for the years at issue in this case (2007, 2008, and 2011), and he has thus been assessed failure-to-pay penalties pursuant to § 6651(a). (Doc. No. 81 at 10.)

The amount of the penalty for failure to file a federal tax return on time is 5% for each month or fraction of a month that the return is late, with a maximum penalty of twenty-five percent (25%). 26 U.S.C. § 6651(a)(1). If, however, a failure to pay penalty is accruing along with a failure to file penalty, then the failure to file penalty is reduced to 4.5% per month. 26 U.S.C. § 6651(c). Once again, as defendant United States notes here, Ploutz did not file income tax returns for the tax years 2007, 2008, and 2011. (Doc. No. 81 at 10.) Indeed, defendant Ploutz does not contest this fact. Accordingly, defendant Ploutz has also been properly assessed failure-to-file penalties pursuant to § 6651(a). (*Id.*)

**C.     Judgment Against Defendant Ploutz**

Based on the foregoing, defendant United States argues that the court should enter a money judgment in its favor against defendant Ploutz. (Doc. No. 81 at 10.)

As shown in the Barclay Declaration (Doc. No. 81-4 at 5), the aggregate balance owed by defendant Ploutz to the United States as of January 31, 2022 is $194,538.08. Accordingly, for the reasons discussed above, the court will enter a judgment in favor of defendant and cross-claimant United States against defendant Ploutz in the amount of $194,538.08 as of January 31, 2022, plus statutory interest and penalties from that date until fully paid.

10

**D.      Whether Ploutz is Entitled to Distributions from the Proceeds held by the Court**

Lastly, defendant United States contends that it is entitled to an order recognizing that its claim to the proceeds from the De Vega Court Property sale—and the claims of the other lien holder parties—"have priority over the claim of Lloyd Ploutz, and therefore . . . Mr. Ploutz is not entitled to any distribution from the Proceeds."[4] (Doc. No. 81 at 11.)

On March 13, 2012, and September 3, 2014, defendant United States recorded "Notices of Federal Tax Lien" with the Stanislaus County Recorder's office as to its tax assessments against defendant Ploutz. (*See* Doc. No. 81-1 at ¶ 2.) By recording those Notices of Federal Tax Lien, defendant United States' tax lien became valid against purchasers, holders of security interests, mechanic's lienors, and judgment creditors subject to the provisions of § 6323(b). *See* 26 U.S.C. § 6323(a). For the reasons addressed above, defendant United States claims that its interest in the proceeds from the sale of the De Vega Court Property is $194,538.08 based upon defendant Ploutz's unpaid taxes and penalties. (Doc. No. 81 at 12.) Thus, the United States asserts, "Mr. Ploutz is not entitled to any distribution of the Proceeds before the United States is paid in full on Mr. Ploutz's unpaid income tax assessments." (*Id.*) In response, defendant Ploutz has not produced any evidence, has failed to answer the complaint in this case as well as defendant United States' crossclaim brought against him, has failed to provide initial disclosures, and has failed to respond to defendant United States' requests for admission.[5] Accordingly, defendant United States urges the court to "enter judgment in favor of the United States and determine that

---

[4] Defendant United States also notes that it "anticipates filing a motion for disbursement of funds consistent with the settlement discussions among the remaining parties" should the court grant the pending motion and determine that defendant Ploutz is not entitled to a distribution of the proceeds. (Doc. No. 81 at 11.)

[5] Defendant Ploutz has filed several letters on the docket in this action, though none are relevant to the merits of the United States' arguments in support of its pending motion for summary judgment. (*See* Doc. Nos. 47, 80, 88.) Rather, in his letters, defendant Ploutz apparently seeks to ensure that the proper parties receive the money that he owes them. In particular, defendant Ploutz states that he wants to "make sure that the proper people like Mr. William Morehead ($75,000.00 1st Trust Deed Holder), Mr. [Seegers] ($9,000.00), and the Grand Park Home Owners Association ($1,300) [are] paid what they honestly [are] [entitled] to receive." (Doc. No. 80 at 2.) Defendant Ploutz also seeks that some funds be set aside for his own "burial and final expenses." (*Id.* at 3.)

1  defendant Ploutz is not entitled to any of the funds held by the Court." (*Id.* at 13.) The court
2  agrees and concludes that under the undisputed evidence submitted in connection with the
3  pending motion for summary judgment, defendant Ploutz is not entitled to any of the funds from
4  the sale of the De Vega Court Property.

## CONCLUSION

For the reasons set forth above,

1. Cross-claimant and defendant United States' motion for summary judgment against defendant Lloyd Ploutz (Doc. No. 81) is granted;

2. The Clerk of the Court is directed to enter judgment in favor of cross-claimant United States on its cross-claim against defendant Lloyd Ploutz in the amount of $194,538.08 plus interest and statutory additions as permitted by law from January 31, 2022, until paid; and

3. The court holds that defendant Lloyd Ploutz is not entitled to any distribution from the funds deposited in this court's registry.

IT IS SO ORDERED.

Dated:  **July 29, 2022**                                                    /s/ Dale A. Drozd
                                                                             UNITED STATES DISTRICT JUDGE